Defendant-appellant, Charles Glorioso, appeals his conviction, after a jury trial, of aggravated robbery in violation of R.C. 2911.01(A)(1) with a firearm specification pursuant to R.C. 2941.145(A). Appellant filed this appeal raising two issues for our review under the following assignment of error:
 DEFENDANT'S CONVICTION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, OR WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE[.]
During the state's case-in-chief, Kim Justice testified that on October 4, 1997, she and her twelve-year-old son, Nathan, pulled up to a drive-thru window at Lee's Famous Recipe in Lebanon, Ohio. While she was in line, a man wearing a ski mask approached the red pickup truck she was driving. The man proceeded to hit the driver-side window with the butt of a long gun, pointed the double-barrel gun at her head through the window, and yelled at her to "get out of the car." Thinking that the assailant wanted money, Justice attempted to roll the window down slightly to give him a $20 bill, but the man indicated that he did not want the money and again yelled at her to "[j]ust get out of the car now." When the car in front of Justice pulled forward, she quickly accelerated and got away. The state also called Nathan, who confirmed Justice's testimony and added that he knew the gun was a twelve-gauge shotgun because he was familiar with this type of gun since his father, older brother, and neighbor were all hunters. Greg Justice, Justice's husband, testified that the pickup truck was very clean at the time of the incident because his stepson had just washed it the day before.
The state then called Kathy Jordan, the driver in front of Justice at the Lee's drive-thru window, and Dawn Meece, who was working at the drive-thru window at Lee's. Both testified to seeing a man in a ski mask banging on the truck window with a shotgun and pointing it at the woman in the driver's seat. Both also stated that the man kept clawing at the window trying to get the window open. The state then called Robin Tipton, an acquaintance of appellant, who stated that appellant had come to her apartment, which was only two or three blocks from Lee's, on October 4, 1997. Tipton stated that appellant was bragging that he had just held up a vehicle by pointing a gun at a woman driving. Appellant told Tipton that the woman tried to give him $20, but when he pointed the gun away to get the $20, the woman took off.
Officer Mark Allen of the Lebanon City Police testified that he obtained the lift of a palm print and several latent finger-prints from Justice's truck window. Ronald Lee Huston of the Miami Valley Regional Crime Lab testified that the prints were sufficient for a positive match to the known exemplars of appellant's finger-prints. In his defense, appellant put forth three alibi witnesses who testified that they were with appellant at home on the evening of October 4, 1997.
After weighing all the evidence, the jury returned a guilty verdict. Appellant now appeals and, under his first issue presented for review, argues that the state failed to present evidence that the gun was an "operable" weapon, and thus failed to establish a necessary element for the firearm specification.
In determining the operability of a firearm, the Ohio Supreme Court has stated as follows:
 A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable * * *, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.
State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph one of the syllabus. See, also, R.C. 2923.11(B)(1)-(2).
In Thompkins, like the current case, the defendant had the gun pointed directly at his victim while holding her up. The Supreme Court stated that "where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Thompkins at 384. Thus, by brandishing the shotgun and pointing it at Justice while telling her to "get out of the car," appellant made an implicit threat which was sufficient to support a finding that the shotgun was operable. See Id. at 383. Appellant's first issue presented for review is without merit.
Under his second issue presented for review, appellant argues that the evidence presented by the state was insufficient to support his identification as Justice's assailant, and that his conviction was against the manifest weight of the evidence. When there is a challenge to the sufficiency of the evidence, a reviewing court must determine whether the state has met its burden of production at trial and decide whether the state's evidence, if believed, would support a conviction.Id. at 390 (Cook, J., concurring).
In this case, the state presented several witnesses who saw a man approach Justice's truck, point the gun at her, and attempt to force his way into the truck. Tipton testified that appellant admitted to committing the crime, and appellant's fingerprints were found on Justice's truck window, which had been washed only one day before. Fingerprints which correspond to those of the accused are sufficient proof of his identity to sustain his conviction where the circumstances show that the prints could only have been impressed at the time of the commission of the crime. State v. Franklin (1991), 62 Ohio St.3d 118,124, quoting State v. Miller (1977), 49 Ohio St.2d 198, syllabus. We find that the state's evidence was sufficient as a matter of law.
Appellant also argues that his conviction was against the manifest weight of the evidence. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. In making this analysis, we must keep in mind that the trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1976), 10 Ohio St.2d 230, paragraph one of the syllabus.
Despite the conflicting testimony presented by appellant's alibi witnesses, when weighed against the compelling evidence presented by the state, we cannot say that the jury clearly lost its way. We find that appellant's conviction was not against the manifest weight of the evidence. Appellant's second issue for review is without merit, and his assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.